513 So.2d 569 (1987)
Dorothy SALTER, d/b/a Dot's Fashion Fabrics
v.
Catherine WATKINS and Hilton Boswell.
No. 57600.
Supreme Court of Mississippi.
September 23, 1987.
*570 J. Max Kilpatrick, Mark S. Duncan, Philadelphia, for appellant.
David Williams, P. Scott Phillips, Williams, Glover, Walton & McAlilly, Meridian, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
Today's appeal requires that we consider the extent to which jurors in a civil action may be called on a motion for a new trial and questioned regarding their deliberations and verdict. This is the first time we have been called to consider this question in the context of the Mississippi Rules of Evidence, effective January 1, 1986.

II.
Dorothy Salter, d/b/a Dot's Fashion Fabrics, Plaintiff below and Appellant here, brought an action in the Circuit Court of Neshoba County, Mississippi, claiming property damage to merchandise in her fabric business. The damages were said to have been caused by Defendants, Catherine Watkins and Hilton Boswell, in the course of making repairs to the roof of Plaintiff's place of business. The jury returned an eleven to one verdict in favor of Defendants on May 6, 1986, and judgment was entered thereon.
Thereafter, Plaintiff Salter timely filed a motion for a new trial alleging, inter alia, that one of the jurors, A.L. Burton, was a relative of the Defendant, Catherine Watkins, and that Burton had failed to divulge this relationship on voir dire examination. Second, Salter alleged that at one time the jurors had voted nine to three for her but that the jury foreman had refused to accept the vote and report it as the verdict of the jury and had insisted that the jurors continue to deliberate.
In support of her motion, Plaintiff Salter sought to call as witnesses Arnold Deweese, foreman of the jury, and Bobby Russell, a member of the jury panel. The Circuit Court sustained the objection to the testimony of both witnesses on grounds that they were called to establish matters which occurred within the jury room and during the course of deliberations. Plaintiff was allowed to make a question and answer proffer of the testimony of the witnesses for the record. Thereafter, on July 8, 1986, the Circuit Court entered its order overruling the motion for a new trial. This appeal has followed.

III.

A.
Our ground rules are afforded by Rule 606(b), Miss.R.Ev., which reads as follows:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
*571 The rationale underlying Rule 606(b) and its common law predecessor is well known.[1] Jurors should be encouraged to discuss freely and candidly all issues in a case. The viability of the system depends upon their being able to vote without fear that later they will be cross-examined or called to justify their actions. The rule is designed to prevent harassment or intimidation of jurors, see United States v. Weiner, 578 F.2d 757, 764 (9th Cir.1978), and to prevent fraud through a juror remaining silent during deliberations and later asserting improper influence. See United States v. Eagle, 539 F.2d 1166, 1170 (8th Cir.1976).
Rule 606(b) is a rule of competency. A juror is not competent as a witness when called to testify concerning events which allegedly occurred during jury deliberations. See Castleberry v. N.R.M. Corp., 470 F.2d 1113, 1116-17 (10th Cir.1972) (in which the court refused to consider testimony that a juror believed she would be kept in the jury room indefinitely), Gault v. Poor Sisters of St. Frances Seraph of Perpetual Adoration, Inc., 375 F.2d 539, 548-51 (6th Cir.1967) (in which the court refused to consider testimony that the jury disregarded instructions), Walker v. United States, 298 F.2d 217, 226 (9th Cir.1962) (in which the court refused to consider testimony that the jury misunderstood instructions), United States v. Ross, 203 F. Supp. 100, 102-03 (E.D.Pa. 1962) (in which the court refused to consider testimony that a juror wanted to get home quickly because her spouse had been in an accident), United States v. Grieco, 261 F.2d 414, 415-16 (2nd Cir.1958) (in which the court refused to consider testimony that a juror would have held out but was intimidated by another juror).
On the other hand, a juror is competent to testify "on the question whether extraneous prejudicial information was improperly brought to the jury's attention." He may testify regarding specific, extra-record facts another juror disclosed in the jury room and urged his fellow jurors to consider. See United States v. McKinney, 429 F.2d 1019, 1030 (5th Cir.1970). Where such extra-record facts affect an issue of importance in the case and are qualitatively different from the evidence properly before the jury, a new trial may be ordered. See United States v. Perkins, 748 F.2d 1519, 1529-34 (11th Cir.1984).

B.
Our first question concerns the charge that the jury foreman refused to accept a preliminary verdict and in effect told the jurors he would stay there "till hell freezes over." The Circuit Court held the jurors incompetent as witnesses on this issue. Plaintiff was allowed, however, to make a proffer in question and answer form.[2]See Rule 103(a)(2), Miss.R.Ev.
Arnold Deweese, the jury foreman, described and testified as to the votes the jury took. Initially, several votes revealed a majority voted for Plaintiff Salter, but not enough for a verdict. After further deliberations, the jury voted and a nine to three vote in favor of Plaintiff was reached.[3] However, instead of accepting that vote, the foreman called for additional discussion and another vote. Foreman Deweese confirmed this in the following colloquy:
Q. So, actually, Mr. Deweese, there was two nine to three votes. One for Mrs. Salter, is that correct?
A. That's right.
Q. And, then, one for Mrs. Watkins, is that correct?
A. That's right.
*572 Plaintiff Salter next called another juror, Bobby Russell, who testified as follows:
Q. Was there ever, at any time, that the Foreman of the jury, Mr. Deweese, failed or refused to report a verdict of nine to three for Mrs. Salter?
A. It was the fourth time we voted. The first three times, it was eight to four for the Plaintiff. The fourth time, it was nine to three for the Plaintiff, Mrs. Salter.
Q. Okay. What happened then?
A. Mr. Deweese said, "I can't accept this." Said, "We're gonna' have to talk about this for a while." He said, "I can't accept this 'til Hell freezes over." He said, "I'll stay in here `til Hell freezes over."
Q. Now, was there  how was that nine to three vote taken?
A. Just like the other three was. Had little slips of paper and each one voted and dropped it in a little cup. The cup was passed around to everybody.
Q. Who counted those votes?
A. A Mrs. Ricks, first, and then Mr. Deweese counted them.
Q. So, Mrs. Ricks counted them?
A. First.
Q. Did Mrs. Ricks count the vote that was nine to three for Mrs. Salter?
A. She did.
Q. Okay. Did you, or any other members of the jury, try to get the Foreman to report that verdict?
A. We did.
Q. What did you do?
A. We told him that the Judge told us that any time it was a verdict of nine to three, either way, that was supposed to be it, but he said he wasn't ready to vote the first time.
It was then stipulated by the parties that another member of the jury would testify that there was a nine to three vote for the Appellant Salter that was not reported by the foreman, and that the foreman stated that he would not accept that verdict.
Mr. Deweese, the foreman, offered an explanation for his action in not accepting the alleged "vote" for Plaintiff.
"We we got in as deep a discussion on the instructions of the court as I knew how to do. So, we had a colored girl on there, and she was rearing to go home. She began to, while we was discussing this as well as we knew how, she began to pass out ballots, and she took about three, at least, polls of them. After a little bit, she says, `We got a majority. We got nine,' I believe. That's what it took. So, all the ballots was on the table. You couldn't tell heads from tails on what she was doing there. I set down and I said, `Listen, we got to have a better ballot than this. Let's take another ballot and everybody settle down and behave.'"
All of this becomes legally irrelevant in view of the fact that upon return of the verdict the court polled the jury. Each juror was asked in open court to state his vote and eleven jurors, when polled by the court, affirmed that their verdict was in favor of the Defendants, Catherine Watkins and Hilton Boswell. Rule 606(b) declares these jurors incompetent regarding the manner in which that eleven to one vote for Defendants was reached, less and except circumstances where extraneous prejudicial information was improperly brought to the jury's attention or where any outside influence was improperly brought to bear upon any juror.
We hold that the foreman's refusal to accept a nine to three verdict and his insistence that a new vote be taken is neither "extraneous prejudicial information" nor "any outside influence" within the meaning and contemplation of Rule 606(b). Even assuming the essential truth of Plaintiff Salter's claim, there is no rule which requires that, the first time nine jurors vote one way or the other in a civil action, the verdict is finally fixed and is no longer subject to discussion or debate. A jury should not return a verdict in a civil case until nine or more jurors assent to the verdict and until the jurors are of the opinion that no further discussion is needed in order to return a true and proper verdict.

*573 C.
Next, Plaintiff Salter argues that jury foreman Deweese failed to inform the Court during voir dire examination that he knew the Appellee, Catherine Watkins. Plaintiff further argues that while in the jury room Deweese acknowledged that he knew her indirectly "and it wasn't any way that he could vote against her." Unlike the previous allegation concerning the foreman's state of mind, this contention, if proven, constitutes the "outside influence" contemplated by Rule 606(b). Accordingly, we examine the relative merit to the claim asserted.
During voir dire examination Deweese was asked whether he personally knew Mrs. Watkins and he testified in fact that he did not. Deweese testified during the proffer on the motion for a new trial that the "First time I ever saw her was in court that morning. I had to ask who she was." Other examination of Mr. Deweese during the proffer was as follows:
Q. Mr. Deweese, did you know Catherine Watkins prior to the trial?
A. After we got into court, I realized I knew her indirectly. I knew her father and her mother and some of her brothers and sisters, and her brother-in-law. I didn't know her husband.
Q. All right, sir.
A. But, I didn't know her until  well, I believe Mr. Bobo was my informer as to who everybody was.
Q. Okay, sir, but you did not acknowledge  when asked on voir dire if you knew them 
A. (Interposing) I didn't know her at that time.
Q. You answered that you didn't know her, didn't you?
A. That's right.
Q. Okay, sir. When in fact did you know her?
A. I did know her, after we got into the case and I began to hear a few things.
Q. Okay, sir, but at voir dire you said that you did not know her.
A. I suppose I didn't, cause I didn't. (emphasis added)
In fact, Deweese had never laid eyes upon Defendant Watkins prior to the trial and had to be told who she was by Mr. Bobo, another juror. There was no evidence that Deweese was even aware of the existence of Watkins before the trial.
When asked on voir dire, Deweese answered that he did not know Watkins and that was an honest answer; therefore, he did not have "substantial knowledge of the information sought to be elicited" as required in Dorrough v. State, 437 So.2d 35, 36 (Miss. 1983).
In United States v. Brooks, 677 F.2d 907 (D.C. Cir.1982) a juror, when asked whether "any of you know the defendant," answered "No." After the trial was over and the defendant was convicted, the juror signed an affidavit claiming that he had noticed the defendant before the trial, had seen the defendant in his place of business at least seven or eight times and had paid him "particular attention" because of his neat appearance. The defendant claimed he was prejudiced by the fact the juror responded negatively to the aforementioned question during voir dire. The Brooks court disagreed, stating:
There is no evidence that the two ever met or exchanged words, or that Brooks was even aware of McRoy's existence. Nor is there any indication of a connection between the crimes with which Brooks was charged and the circumstances in which McRoy observed him. Second, the affidavit states that when the jury panel was asked during voir dire whether "any of you know the defendant" ... McRoy "honestly answered `No' because I did not recall having ever seen him before at the time" (emphasis added). In any event there is no claim that McRoy ever "knew" Brooks, only that he had at some distance seen him casually a few times under circumstances which at the time of trial he did not remember.
677 F.2d at 909-10.
In the case at bar it is undisputed that Deweese did not know Defendant Watkins and that he did not realize that he knew members of her family until after the *574 trial began. Since he was not asked during voir dire whether he knew members of her family and since he was not aware during voir dire that he knew members of her family, Deweese was under no obligation to bring that information to the attention of the court.
Assuming arguendo that the statements attributed to Deweese do constitute specific, extra-record facts affecting an issue of importance in the case, we do not consider them so substantial that we should hold that the Circuit Court abused its discretion in denying Salter's motion for a new trial. See McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).
AFFIRMED.
ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
WALKER, C.J., not participating.
NOTES
[1] For a useful history of Rule 606(b), Fed.R.Ev., from which our rule has been taken, see Tanner v. United States, 483 U.S. ___, 107 S.Ct. 2739, 97 L.Ed.2d 90, 104-10 (1987).
[2] Today's case presents a setting in which ordinarily a party should be held to make his proffer by dictating into the record a statement of what the juror witness would say if allowed to testify. See Rule 103(a)(2) and (b), Miss.R.Ev., and Comments thereto. If the witness is incompetent under Rule 606(b), subjecting him to examination and cross-examination, though only as a part of a proffer, may have the effect of subverting the purposes of the rule.
[3] In a civil action, nine or more jurors may agree upon a verdict and return it into court as the verdict of the jury. Miss. Code Ann. § 13-5-93 (1972).