# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-01622-SCT

*DOT MERCHANT, AS ADMINISTRATRIX OF THE ESTATE OF CHARLES ERNIE HARRIS, SR., AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF CHARLES ERNIE HARRIS, SR.*

*v.*

*FOREST FAMILY PRACTICE CLINIC, P.A. AND JOHN P. LEE, M.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/11/2009 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SHANE F. LANGSTON |
| | REBECCA M. LANGSTON |
| ATTORNEYS FOR APPELLEES: | ANASTASIA G. JONES |
| | MILDRED M. MORRIS |
| | JAMES A. BECKER, JR. |
| | TIMOTHY LEE SENSING |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART AND REMANDED - 08/11/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. In August 2008, the Estate of Charles Ernie Harris, Sr. ("Estate") filed a medical malpractice action against John P. Lee, M.D., and the Forest Family Practice Clinic ("Clinic")[1] in the Circuit Court of Scott County, Mississippi. Three days prior to trial, the

---

[1]Dr. Lee is president of, and holds a one-third ownership interest in, the Clinic.

Estate filed a "Motion to Transfer Venue" based upon Dr. Lee's status in the community and his son's position as the Scott County Sheriff. The circuit court denied the Estate's "Motion to Transfer Venue." In jury selection, the Estate subsequently exercised only seven of its ten peremptory challenges.[2] Ultimately, the empaneled jury returned a verdict in favor of Dr. Lee and the Clinic.

¶2. Following the circuit court's entry of "Final Judgment," the Estate filed a "Motion to Investigate Juror Misconduct, to Set Aside or Void Jury Verdict, to Void or Set Aside Final Judgment, for New Trial, and to Change Venue." Regarding juror misconduct, the Estate attached a juror affidavit which provided that, during deliberations, another juror had revealed prejudices and information which had not been disclosed in voir dire, and repeatedly had referred to a separate lawsuit which the circuit judge had instructed the jury to disregard. Following hearing, the circuit court denied the Estate's post-trial motions. The Estate now appeals.

**FACTS**

¶3. The merits, *vel non*, of this case are not at issue on appeal, but this Court will briefly recount the undisputed facts. Harris was treated for gout of the left foot by Dr. Lee at the Clinic on multiple occasions between June 13, 2006, and June 30, 2006. On July 2, 2006, Harris was taken to the emergency room of Mississippi Baptist Medical Center and was

---

[2]Each party was provided ten peremptory challenges (six more than usual), based upon the concerns raised in the Estate's motion. *See* Miss. R. Civ. P. 47(c) ("[i]n actions tried before a twelve-person jury, each side may exercise four peremptory challenges. . . . Where one or both sides are composed of multiple parties, the court may allow . . . additional challenges . . . .").

diagnosed as septic. As a result of the sepsis, Harris's left leg was amputated. On August 13, 2006, Harris died. On August 6, 2008, the Estate filed a complaint against the Clinic, Dr. Lee, and John Does 1-10, alleging, *inter alia*, medical negligence, vicarious liability, and wrongful death.

¶4. On Friday, May 29, 2009, three days before trial, the Estate filed a "Motion to Transfer Venue and for Continuance," contending that it:

> has good reason to believe, and does believe that, from the undue influence of [Dr. Lee] and his partners . . . as well as the fact that Dr. Lee is the father of the Sheriff of Scott County, Mike Lee,[3] that [the Estate] cannot obtain a fair and impartial trial in Scott County . . . .

Regarding Dr. Lee and the Clinic, the Estate maintained that "a large majority of residents . . . in Scott County will be either current or former patients of one of the three doctors at [the Clinic]." As to Sheriff Lee, the Estate asserted that "every potential juror will know Sheriff Lee and/or one of his deputies . . . . Also, the Sheriff's deputies may be acting as bailiffs or [c]ourt security during the trial and thus the risk of imposing an unintentional influence may be present." In addressing the Estate's motion, the circuit judge stated that "this case has been on the docket for some time. You chose the venue in the filing of the suit . . . . The fact that [Dr. Lee] is a prominent doctor, you knew that [at] the time you filed the suit." As to Sheriff Lee, the circuit judge found that his identity previously had been disclosed[4] and his position was "an easy matter of discovery" which, "in and of itself, does not entitle you to

---

[3]According to the Estate, it learned that Sheriff Lee was Dr. Lee's son only on the evening of Wednesday, May 27, 2009, five days before trial.

[4]As noted by counsel for Dr. Lee, in a December 2008 deposition, Dr. Lee stated that he had a son named Mike Lee.

have me sustain your motion for change of venue." The circuit court denied the Estate's

"Motion to Transfer Venue."[5]

¶5.     When jury selection began, the circuit judge noted that:

> I issue[d] a summons for 185 jurors to begin with for a term of [c]ourt. The Clerk advised after I had [excused] people who were 65 and older and sick or whatever that we only had 39. So we summonsed [sic] 65 additional. . . . [W]hen we get a list of the jurors, *I'm going to expand the peremptory challenges* that you have *because of the issue that you raised that Dr. Lee is a doctor of this county and that [Sheriff] Lee is the son of the doctor*.

(Emphasis added.) Thereafter, the circuit court provided each party with ten peremptory

challenges, based upon the "prominence of the parties in the case." Further, before voir dire

began, the circuit judge specifically instructed the venire that Dr. Lee was a party in the case,

that Sheriff Lee was his son, and that neither fact should "affect your judgment in this case"

or interfere with "[y]ou[r] . . . oath . . . that you will be fair and impartial on the evidence of

the case."

¶6.     During voir dire, twenty-one members of the venire acknowledged that either they or

their family members had been treated by Dr. Lee or other Clinic physicians, and/or that they

---

[5]At trial, the Estate renewed its "Motion to Transfer Venue." In addressing that renewed motion, the circuit judge reiterated that it was not timely filed and further stated that "[i]t cannot successfully be argued that just because [Dr. Lee] is a doctor, that he enjoys such a position in this community that his position would be more persuasive." According to the circuit judge, "there must be some evidence of that . . . ." As to Sheriff Lee, the circuit judge stated that "I've witnessed in this very courtroom many times those defendants that he has brought into this courtroom were acquitted in a trial by jury." Finally, according to the circuit judge, "when you all come into a . . . rural county of [Mississippi], . . . you must expect there will be familiarity with the people; that there will be knowledge of their backgrounds and . . . histories[,]" and that "the duty would pass to [the Estate] to investigate the popularity of the Defendants . . . ." As such, the circuit judge stated that determining that Sheriff Lee was Dr. Lee's son only days before trial was "no one's fault but your [the Estate's] own."

4

had a personal relationship with Dr. Lee or Sheriff Lee. Four other members of the venire stated that they had relatives who either worked for, or had law-enforcement matters pending with, the Scott County Sheriff's Department. Following voir dire, the Estate challenged numerous members of the venire "for cause." The circuit court excused eight members of the venire "for cause." The Estate then exercised seven of its ten peremptory challenges.

¶7.     At trial, during cross-examination of the Estate's medical expert, Dr. Steven Schwartz, counsel for Dr. Lee asked the following question, "[a]s far as your medical legal business picking up, can you tell me if you've been retained as an expert in *the case where [counsel for the Estate] is suing Dr. Howard Clark just up the road*?"[6] (Emphasis added.) After the Estate's objection was sustained, the circuit judge instructed the jury to disregard that question, and the jurors affirmatively responded that they would heed said instruction. The Estate moved for a mistrial, emphasizing that:

> [w]e've already talked about the fact that there are only about five doctors in the whole county. . . . [I]f any of those jurors are friends of Dr. Clark or go see Dr. Clark, they may be prejudiced by that comment. There was no reason whatsoever for that question. . . . I know the [c]ourt gave an instruction for the jury to disregard it, but given everything else we've talked about with regard to the [S]heriff and the doctors and the small communities, that . . . justifies a mistrial.

The circuit judge denied the Estate's motion, stating that "I instructed the jury to disregard the statement. All 13 stated they would follow my instructions, so I chose to believe that will be done."

---

[6]During the "for-cause" challenges portion of jury selection, the circuit judge had stated, "[a]m I wrong in saying that there are only two clinics in Scott County[?] . . . The only other clinic would be Dr. Howard Clark in Morton."

¶8.     After the Estate rested, it renewed its motion for mistrial based upon the "cumulative effect" of the question counsel opposite posed to Dr. Schwartz,[7] the presence of "Sheriff Lee's deputies . . . in the courtroom throughout the trial[,]" and an allegation that a deputy sheriff had spoken with Dr. Lee and had shaken his hand in "full view of the jury." Regarding the question to Dr. Schwartz, the circuit judge reiterated that "I choose to believe that with an instruction such as I gave . . . that [the jury] would follow the [c]ourt's instructions . . . ." As to the conduct of the deputy sheriffs, the circuit judge stated that he had not observed them "being in the way of anyone or having familiarity with the" parties. The circuit court overruled the Estate's renewed motion for mistrial.

¶9.     Following deliberation, the jury returned a verdict in favor of Dr. Lee and the Clinic. A poll of the jury revealed nine jurors agreed, two disagreed, and one was undecided. On June 11, 2009, "Final Judgment" was entered by the circuit court.

¶10.     On June 12, 2009, the Estate filed a "Motion to Investigate Juror Misconduct, to Set Aside or Void Jury Verdict, to Void or Set Aside Final Judgment, for New Trial, and to Change Venue."[8] Regarding juror misconduct, the Estate attached the affidavit of Juror

---

[7]In a post-trial motion, the Estate added that Dr. Clark's deposition testimony from the improperly referenced case established that he:

> is a long-time prominent physician in Scott County and that [his] son is a prominent chancery judge . . . in Scott County . . . . [He] has delivered over 4,500 babies in the Scott County area; he provides the only pediatric and internal medicine services in Scott County; and he has been the [physician] for the Morton High School for over 51 years . . . .

[8]The circuit court subsequently required the Estate "to file three separate motions as grounds for relief." Thereafter, the Estate filed a separate "Motion to Investigate Juror Misconduct," "Motion to Set Aside or Void Jury Verdict, to Void or Set Aside Final Judgment and for New Trial," and "Renewed Motion to Transfer Venue." These separate

6

Maria Lopez.[9] That affidavit provided, in pertinent part, that during jury deliberations, Juror Clyde Lowden had stated, *inter alia*:

> *[t]hat he had been a patient of both Dr. Lee and Dr. Clark. That both were good doctors and that we the [j]ury could not "let those attorneys keep taking money from our doctors."* [Pace] and I reminded [Lowden] that the [c]ourt had instructed us to disregard the comment about a lawsuit against Dr. Clark. [Lowden] nonetheless *continued to refer to that lawsuit* in an attempt to persuade his fellow jurors to vote in favor of Dr. Lee.

(Emphasis added.) According to the Estate, Lowden prejudicially had failed to disclose in voir dire that he had been a patient of Dr. Lee.[10] The Estate also contended that Lowden had

_____

motions were substantively identical to the consolidated motion filed on June 12, 2009.

[9]According to counsel for the Estate, "subsequent to the jury rendering its verdict, we walked outside the courthouse. [Lopez] and another juror, [Tina Pace], approached us and said they were sorry, that it wasn't right . . . . We talked to [Lopez] subsequent to that . . . and that's in her affidavit." This Court notes that the jury returned its verdict on June 3, 2009, and Lopez's affidavit was taken on June 5, 2009, yet the issue of juror misconduct was not brought to the attention of either the circuit court or counsel opposite until the Estate's post-trial motion was filed on June 12, 2009. While this issue was not presented on cross-appeal by Dr. Lee and the Clinic, this Court advises that the better practice is for:

> the trial court and opposing counsel [to] be made aware of any potential juror misconduct when this evidence is manifested. Thus, if a juror approaches an attorney for one of the parties or the court itself, or if either subsequently learns such through alternative means, all parties involved should be made aware of the allegation as expeditiously as possible.

***Gladney v. Clarksdale Beverage Co., Inc.***, 625 So. 2d 407, 418 (Miss. 1993). In fact, we take this opportunity to remind the bench and bar of the entire "method to uniformly execute juror inquiry, under [Mississippi Rule of Evidence] 606(b)" outlined in ***Gladney***. ***Id***. at 418-19.

[10]In their "Response" to the Estate's post-trial motions, Dr. Lee and the Clinic maintained that "a search of [the Clinic's] electronic patient records – which includes patient records for the previous eight years – indicates that [Lowden] has not been treated by any doctor at the Clinic during this time period." The "Response" added that "Defendants cannot speak to what [Lowden] stated during jury deliberations as Defendants have not received the [c]ourt's permission to contact any jurors and have not done so."

7

"intentionally violated the [c]ourt's clear and unambiguous charge and repeatedly referenced the lawsuit against Dr. Clark as a reason to rule in favor of Dr. Lee." The Estate maintained that such is "precisely the type of 'extraneous prejudicial information' envisioned by" Mississippi Rule of Evidence 606(b).

¶11. On August 17, 2009, a hearing was held before the circuit court on the Estate's post-trial motions. Regarding juror misconduct, the circuit judge examined Lopez's affidavit, then stated:

> [t]he question to me is the [c]ourt having instructed the juror to disregard that statement, was that then extraneous information that was brought into the jury room. If so, it would support the allegation of [Lopez] that there was extraneous information brought in if they chose somewhat to ignore the [c]ourt's instruction.

The circuit judge then permitted examination of Lopez, during which she reiterated the statements from her affidavit, with limited additions[11] and retractions. Following Lopez's testimony, the circuit judge emphasized that the "ultimate issue" is "whether or not [Dr. Lee] in his diagnosis and treatment departed from the standard of care required of physicians of his standing." Based thereon, the circuit judge determined that the statements made by Lowden were not "prejudicial to the outcome" as "jurors are permitted to bring some degree of personal knowledge and experience into the deliberation process without jeopardizing their verdict."

---

[11]According to Lopez, regarding the lawsuit against Dr. Clark, Lowden "just kept bringing it up. . . . [I]t was just a huge argument as to us telling him to disregard it when he just kept bringing it in."

8

¶12. On September 11, 2009, the circuit court entered an "Order" denying the Estate's "Motion to Set Aside or Void Jury Verdict, to Void or Set Aside Final Judgment and for New Trial." Based thereon, the circuit court also entered an "Order" denying the Estate's "Renewed Motion to Transfer Venue" as moot. From those rulings, the Estate filed timely "Notice of Appeal."

## ISSUES

¶13. On appeal, the Estate presented the following issues, *inter alia*:

I. Whether the circuit court abused its discretion in denying the Estate's "Motion to Transfer Venue."
II. Whether the circuit court abused its discretion in denying several of the Estate's requests to strike members of the venire "for cause."
III. Whether the circuit court abused its discretion in denying the Estate's motion for mistrial following counsel opposite's reference to a lawsuit against Dr. Howard Clark, a sustained objection thereto, and a curative instruction.
IV. Whether the circuit court erred in denying the Estate's motion for new trial based upon juror misconduct.

## ANALYSIS

**I. Whether the circuit court abused its discretion in denying the Estate's "Motion to Transfer Venue."**

**II. Whether the circuit court abused its discretion in denying several of the Estate's requests to strike members of the venire "for cause."**

**III. Whether the circuit court abused its discretion in denying the Estate's motion for mistrial following counsel opposite's reference to a lawsuit against Dr. Howard Clark, a sustained objection thereto, and a curative instruction.**

¶14. This Court will address these issues collectively, as an abuse-of-discretion standard of review applies to each, individually. *See Birkhead v. State*, 57 So. 3d 1223, 1237 (Miss. 2011) (quoting *Dora v. State*, 986 So. 2d 917, 921 (Miss. 2008)) ("The standard of review

9

for denial of a motion for mistrial is abuse of discretion."); ***Crenshaw v. Roman***, 942 So. 2d 806, 809 (Miss. 2006) ("An abuse of discretion standard of review is applied by this Court when reviewing the trial court's denial of a motion to change venue."); ***Miss. Transp. Comm'n v. Highland Dev., LLC***, 836 So. 2d 731, 738 (Miss. 2002) (quoting ***Smith v. State***, 802 So. 2d 82, 86 (Miss. 2001)) ("A trial court has wide discretion in determining whether to excuse prospective jurors, including those challenged for cause.").

¶15.    Mississippi Code Section 11-11-3(3) provides, in pertinent part, that:

> any action against a licensed physician . . . including any legal entity which may be liable for their acts or omissions, for malpractice, negligence, error, omission, mistake, breach of standard of care or the unauthorized rendering of professional services shall be brought only in the county in which the alleged act or omission occurred.

Miss. Code Ann. § 11-11-3(3) (Rev. 2004).  In this case, the circuit court denied the Estate's "Motion to Transfer Venue" from that statutorily required forum, but also summoned additional jurors to expand the venire and granted six additional peremptory challenges to each side.  Under these circumstances, this Court cannot conclude that the circuit court abused its discretion in denying the Estate's "Motion to Transfer Venue."

¶16.    As to denying several of the Estate's "for-cause" challenges, this Court concludes that the circuit court cannot be found to have abused its discretion because the Estate exercised only seven of its ten peremptory challenges.  *See **Illinois Cent. R.R. Co. v. Hawkins***, 830 So. 2d 1162, 1176 (Miss. 2002) (quoting ***Scott v. Ball***, 595 So. 2d 848, 851 (Miss. 1992)) ("This Court has 'consistently held that the trial court may not be put in error for refusal to excuse jurors challenged for cause when the complaining party chooses not to exhaust his peremptory challenges.'").

¶17.    Regarding denial of the Estate's motion for mistrial following the improper question by counsel opposite, the record reflects that the circuit judge sustained the Estate's objection to the question, issued an instruction for the jury to disregard the question, and then received an affirmative response from the jury that his instruction would be heeded. "Absent unusual circumstances, where objection is sustained to improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error." **Wright v. State**, 540 So. 2d 1, 4 (Miss. 1989). As "[t]he jury is presumed to have followed the directions of the trial court[,]" this Court concludes that the circuit court did not abuse its discretion in refusing to grant the motion for mistrial at that time. **Walker v. State**, 671 So. 2d 581, 621 (Miss. 1995).

¶18.    Accordingly, this Court concludes that these issues are without merit.

**IV.  Whether the circuit court erred in denying the Estate's motion for new trial based upon juror misconduct.**

¶19.    "Our judicial system is grounded toward providing a fair trial." **Hudson v. Taleff**, 546 So. 2d 359, 362 (Miss. 1989). To that end, "Article 3, § 14 of the Mississippi Constitution guarantees due process of law, including a fair and impartial trial." **Brown v. Blackwood**, 697 So. 2d 763, 769 (Miss. 1997) (citing **Hudson**, 546 So. 2d at 363). Accordingly, "[t]he circuit court has an absolute duty . . . to see that the jury selected to try any case is *fair, impartial and competent*." **Brown**, 697 So. 2d at 769 (emphasis added). In short, a jury verdict impermissibly influenced, without adherence to the evidence and in defiance of instructions of the trial court, cannot be sanctioned, as that verdict is the product of a trial that is neither fair nor impartial.

11

¶20.   Mississippi Rule of Evidence 606(b) prohibits jurors from testifying to statements made during jury deliberations, subject to the exception "that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention *or* whether any outside influence was improperly brought to bear upon any juror." Miss. R. Evid. 606(b) (emphasis added).  *See also* **Payton v. State**, 897 So. 2d 921, 954 (Miss. 2003) ("jurors may testify about misconduct in their presence or about outside influences on the jury panel").  Based upon the record presented, the learned circuit judge fulfilled his duty in jury selection based upon the disclosures provided.  However, unbeknownst to the circuit court during trial, the voir dire and jury-deliberation processes were flawed.  Specifically, Lopez's affidavit and subsequent testimony offered unrebutted evidence that Lowden "failed to truthfully answer questions during voir dire[,]" which implicated an "'outside influence' contemplated by Rule 606(b)."  **Mariner Health Care, Inc. v. Estate of Edwards**, 964 So. 2d 1138, 1146 (Miss. 2007); **Salter v. Watkins**, 513 So. 2d 569, 573 (Miss. 1987).  According to this Court:

> [t]he *standard of review for juror misconduct arising from a failure to respond to questions during voir dire* is as follows:
>
>> [w]here a prospective juror . . . fails to respond to a question . . . on voir dire, the [c]ourt should determine whether the question was (1) relevant to the voir dire examination, (2) whether it was unambiguous, and (3) whether the juror had substantial knowledge of the information sought to be elicited.  If all answers to the above questions are affirmative, then the court determines if prejudice . . . in selecting the jury could be inferred from the juror's failure to respond.

**Mariner Health Care**, 964 So. 2d at 1146-47 (quoting **Barker v. State**, 463 So. 2d 1080, 1083 (Miss. 1985)) (emphasis added).

12

¶21.    During voir dire, the circuit judge asked the venire, "[w]ith that type of case, a case where a doctor has been sued for malpractice, will that affect your judgment in this case?" The first inquiry posed by counsel for the Estate during voir dire was "[w]ould you raise your hand if any of you have had an occasion to be treated at the [Clinic] by Dr. Lee or any other doctors[?]" Counsel for the Estate later asked the venire, "would you raise your hand if you feel like . . . you should not sit on this jury because of the knowledge of . . . Dr. Lee or his [C]linic . . . , that you feel like you shouldn't sit on this jury because you can't put aside that bias[?]" Finally, counsel for Dr. Lee asked the venire, "you will make your decision based on the actual evidence and the [j]udge's instruction. Are you all aware of that?" During voir dire, the venire members (including Lowden) also responded affirmatively that they "still have an open mind and can receive the evidence and the law of this case and make a fair decision[,]" and that they will "listen to the evidence, listen to the [c]ourt, and . . . follow the [c]ourt's instructions, even if for some reason you disagree . . . ."[12] This Court finds the aforementioned questions were "unambiguous" and "relevant to the voir dire examination," insofar as each sought to reveal potential juror bias. *Mariner Health Care*, 964 So. 2d at 1146-47 (quoting *Barker*, 463 So. 2d at 1083). Yet, according to the record presented, Lowden failed to respond affirmatively to any of these questions despite having "substantial knowledge of the information sought to be elicited[,]" such that he was under an "obligation to bring that information to the attention of the court." *Id*.; *Salter*, 513 So. 2d at 574. *Lowden's judgment* was affected not only by the nature of the action, but also the participants

---

[12]Additionally, Jury Instruction D-5 stated that "your verdict must be based solely upon the testimony, evidence and instructions of this [c]ourt."

13

to the proceeding, given his statement that Dr. Lee was a "good docto[r] . . . ." Moreover, Lowden failed to respond honestly to voir dire queries and did not reveal until jury deliberations that "he had been a patient of . . . Dr. Lee . . . ." Additionally, Lowden's repeated references to the separate lawsuit against Dr. Clark, another "good docto[r]," despite the circuit court's clear and unequivocal instruction to disregard the lawsuit against Dr. Clark, reveals a decision guided by neither the evidence admitted nor the circuit court's instructions of law.

¶22.	Regarding prejudice, when:

> a party shows that a juror *withheld substantial information or misrepresented material facts*, and where a *full and complete response would have provided a valid basis for challenge for cause*, the trial court *must* grant a new trial, and, failing that, *we must reverse on appeal. We presume prejudice.* Where, as a matter of common experience, a *full and correct response would have provided the basis for a peremptory challenge*, not rising to the dignity of a challenge for cause, our courts have *greater discretion*, although a discretion that should always be exercised *against the backdrop of our duty to secure to each party trial before a fair and impartial jury*.

*T.K. Stanley, Inc. v. Cason*, 614 So. 2d 942, 949 (Miss. 1992) (citing *Myers v. State*, 565 So. 2d 554, 558 (Miss. 1990)) (emphasis added). Lowden's failure to respond to the aforementioned questions amounted to withholding "substantial information" which "would have provided a valid basis for challenge for cause . . . ." *T.K. Stanley*, 614 So. 2d at 949 (citing *Myers*, 565 So. 2d at 558). In fact, the Estate had challenged "for cause" all individuals who had been treated by Dr. Lee, and several of those individuals had been excused by the circuit court "for cause." Furthermore, Lowden's refusal to abide by the circuit court's instruction to disregard the lawsuit against Dr. Clark resulted in the repeated, prejudicial injection of that subject during jury deliberation.

14

¶23. For these collective reasons, this Court concludes that the Estate's right to a "fair, impartial and competent" jury was prejudicially compromised. ***Brown***, 697 So. 2d at 769. Lowden's lack of candor during voir dire, and subsequent disclosures and opinions which surfaced only in jury deliberation, "resulted in fundamental unfairness" to the Estate. ***T.K. Stanley***, 614 So. 2d at 954. Accordingly, this Court reverses and remands for a new trial.

## CONCLUSION

¶24. This Court affirms the Circuit Court of Scott County's denial of the Estate's "Motion to Transfer Venue," its denial of several of the Estate's "for-cause" challenges, and its denial of the Estate's motion for mistrial based upon the improper question of counsel opposite. This Court reverses the circuit court's denial of the Estate's "Motion to Set Aside or Void Jury Verdict, to Void or Set Aside Final Judgment and for New Trial" as to juror misconduct, and remands for a new trial consistent with this opinion.

¶25. **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND KING, JJ.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶26. While I agree that the judgment should be reversed based on juror misconduct, I respectfully cannot join the majority opinion's unnecessary analysis regarding the other three issues. Because the issue of juror misconduct is dispositive, the remaining issues are moot, and any discussion regarding them is advisory in nature. The proper disposition in this case

15

is "reversed and remanded;" but because the majority affirms in part, I cannot fully concur with the result.

**CHANDLER AND KING, JJ., JOIN THIS OPINION.**