UNITED STATES of America, Appellee,

v.

Freddie A. BROOKS, Appellant.

No. 81–1621.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 25, 1981.

Decided April 20, 1982.

Donald Wheeler Jones, Washington, D. C., for appellant.

Kathleen E. Voelker, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty. at the time the brief was filed, Washington, D. C., John A. Terry, Michael W. Farrell and Andrea L. Harnett, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before MacKINNON, ROBB and ED-WARDS, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

Appellant Brooks seeks review under 28 U.S.C. § 2255 (1976) of the district court's dismissal of his petition to vacate his 1968 sentence for first degree murder and un-

lawful possession of a prohibited weapon. For the reasons set forth below, we affirm the judgment of the district court.

## I.

Brooks was convicted by a jury of murder in the first degree in December 1968 and sentenced to life imprisonment. That conviction was affirmed by this court, *United States v. Brooks*, 449 F.2d 1077 (D.C.Cir. 1971), in an opinion by Judge Leventhal. In the 13 years since his conviction, Brooks has filed at least ten petitions under section 2255 seeking to vacate his conviction, all of which were denied.

The instant petition, filed on September 5, 1980, claims that Brooks was denied his right to trial by an impartial jury under the Sixth Amendment. The principal basis of this claim is the affidavit of February 22, 1980 by the foreman of the 1968 jury that convicted Brooks, one James McRoy. This affidavit is set forth in the margin.[1] It states that McRoy, "in the late spring or early summer of 1968 . . . began to see one Freddie A. Brooks who visited my place [of work] during work hours." The affidavit states that McRoy saw Brooks enter and exit McRoy's place of employment, a cleaning establishment, seven or eight times over a period of weeks. Brooks claims that this series of casual observations, which all concede McRoy did not recall at the time of trial, gave rise to at least the *possibility* that McRoy possessed a *subconscious memory* of Brooks that may have prejudiced him against Brooks. On this basis Brooks sought an evidentiary hearing in the district court to determine, possibly through the use of hypnosis, whether McRoy was prejudiced when he participated as a juror in Brooks' trial. The district court dismissed Brooks' petition without a hearing, and Brooks appeals.

## II.

Before considering Brooks' claim we note the limited content of the McRoy affidavit. First, it contains only the very limited statement that McRoy "saw" and "paid attention" to Brooks. There is no evidence that the two ever met or exchanged words, or that Brooks was even aware of McRoy's existence. Nor is there any indication of a connection between the crimes with which Brooks was charged and the circumstances in which McRoy observed him. Second, the affidavit states that when the jury panel was asked during *voir dire* whether "any of you know the defendant" (Transcript of

---

1. I, James E. McRoy of 1200 North Capital St., N.W., Washington, D. C. 20001, being first duly sworn according to law depose and say:

 1. I was born on December 21, 1923, in Rockville, MD. I am presently an employee of Bergman's Laundry and Dry Cleaners, 623 G. St., N.W. and have been continually employed there since July of 1958.

 2. During my employment there in the late Spring or Early Summer of 1968, I began to see one Freddie A. Brooks who visited my place during work hours. My work place was situated so I could see him come and leave the establishment. I saw him over a period of weeks at least 7 or 8 times. I would notice him as he arrived and again as he left.

 I paid particular attention to him because of his neat, immaculate and fashionable attire. In addition, he had a noticeable processed hair style.

 Later during December 10th through December 13th, 1968, I was jury foreman in the case of *U. S. v. Brooks*, in which the same man that I had seen visiting my place of work, was the defendant.

 When asked during the trial if I recognized the defendant, I honestly answered, "No" because I did not recall having ever seen him before at that time.

 After the trial was over, one of my co-workers, Ann _____ (last name unknown) told me that the defendant, Freddie Brooks, was the same man that I had often seen coming to Bergman's to visit a co-worker. I subsequently definitely recalled that the defendant Freddie Brooks was indeed the same man that visited Bergman's Laundry frequently. [Signed]

Dec. 10, 1968 at 12), McRoy "*honestly* answered 'No' because I did not recall having ever seen him before at that time" (emphasis added). In any event there is no claim that McRoy ever "knew" Brooks, only that he had, at some distance, seen him casually a few times under circumstances which at the time of trial he did not remember. McRoy states in his 1980 affidavit that he came to the realization that Brooks and the man he had seen enter the cleaning shop were the same person only at some unspecified time "[a]fter the trial was over"—when a co-worker suggested such fact to him. The date between 1968 and 1980 exactly when the co-worker made the suggestion is not stated, nor is her last name known to McRoy or otherwise disclosed in the record.

In order to provide some basis for a claim of *possible* prejudice on the part of McRoy, Brooks proffered the affidavit of a practicing clinical phychologist.[2] This affiant states that in his expert opinion the simple fact that McRoy had seen Brooks prior to trial established that McRoy "retained a

subconscious memory of Mr. Brooks even though he did not consciously recall him at any time during the trial." That subconscious memory, the affidavit states, in turn "acted on and influenced to some extent the attitude, deliberative process, thought content and emotional reactions of Mr. McRoy as he regarded Mr. Brooks during his trial." There is no assertion, however, that McRoy's subsconscious memory *adversely* affected Brooks. The affidavit concludes that the existence and effect of McRoy's "subconscious memory" of Brooks could be ascertained through hypnosis of McRoy, "assuming it can be accomplished."

A third affidavit was executed by Brooks' trial counsel. It stated that counsel, had he been aware of McRoy's sightings of Brooks prior to trial, would have exercised a peremptory challenge to strike McRoy from the jury. There is no claim that he could have been struck for cause.

 The district court denied Brooks' petition without conducting an evidentiary hearing. It held that the failure of a juror

---

2. The affidavit states:

I, Melvin Gravitz, Ph.D., of 8113 Cindy Lane, Bethesda, Maryland 20034, being first duly sworn, depose and say:

1. That I am possessed of the following credentials and qualifications as detailed in my resume attached hereto as Gravitz Affidavit Exhibit # 1, which I incorporate as a part of this affidavit by reference. [exhibit here omitted]

2. That I am familiar with the affidavit of the former Jury Foreman in *U. S. v. Freddie Brooks*, James E. McRoy.

3. Based upon the facts set forth in Mr. McRoy's affidavit, I am of the following expert opinions:

a. *As to Retention of Memory of Brooks by Mr. McRoy.*

The facts indicate that Mr. McRoy retained a subconscious memory of Mr. Brooks even though he did not consciously recall him at any time during the trial.

b. *As to Effect of the Subconscious Memory of Mr. Brooks on His Deliberative, Emotional, and General Thought Processes.*

The subconscious memory of Mr. Brooks acted on and influenced to some extent the attitude, deliberative process, thought content and emotional reactions of Mr. McRoy as he

regarded Mr. Brooks during his trial. The reality of this subconscious memory of Mr. Brooks affected Mr. McRoy at a subconscious level that he was unaware of but which, nevertheless, influenced him as aforestated.

c. *Hypnosis of Mr. McRoy—Probable Confirmation Mr. McRoy. Subconscious Memory.*

Hypnosis of Mr. McRoy, assuming it can be accomplished, would unearth both the subconscious memory of Mr. Brooks that Mr. McRoy had during the trial, and its influence upon his mental processes during the trial.

d. *Subsconscious Memory and Its Effect is a Well-Known Psychological Phenomenon.*

Memory is basically of two types: 1) conscious, and 2) subconscious. A great deal of modern psychological techniques are primarily concerned with probing the unconscious memories directly or indirectly to ascertain and alleviate any harmful effect that they may exert upon behavior.

A specific listing and discussion of learned treatises, books and articles that deal with the subject can be supplied by the undersigned during testimony or upon Order of the Court. [Signed]

to disclose information sought on *voir dire* requires a new trial only where the information was deliberately withheld; since deliberate concealment of a fact is possible only if the concealer is aware of the fact in the first place, that standard was not satisfied by Brooks' allegations. On appeal from that decision, Brooks urges that the petition presented facts sufficient to warrant conducting an evidentiary hearing on the question of prejudice.[3] We disagree.

### III.

■ Section 2255 provides:

*Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief,* the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255 (1976) (emphasis added). Rule 4 of the Rules Governing Proceedings in the United States District Courts under Section 2255 (1976) similarly provides that if on initial consideration by the district court "it plainly appears from the face of the motion and any annexed exhibits . . . that the movant is not entitled to relief," a 2255 petition may be summarily dismissed. *See also id.* Rule 8. It is therefore beyond dispute that section 2255 does not require an evidentiary hearing in every case. *Dan-*

*iels v. United States,* 357 F.2d 587 (D.C.Cir. 1966). We conclude that the district judge did not abuse her discretion in denying Brooks' petition without an evidentiary hearing.

■ The suggestion that the court, in a collateral attack on a conviction well over ten years old, was required to take and give credence to evidence that a juror had *"subconscious* memories" that must be probed years later, is based on an unacceptable extension of the bounds of due process. We hold that a juror's testimony as to nonprejudicial "subconscious memory" that was unrecalled over ten years previously on *voir dire* cannot constitute a *post hoc* basis for a hearing to challenge the juror's competency. There is no showing that McRoy's "subconscious memory" indicated any prejudice against Brooks, and we refuse on such fanciful and speculative grounds to require an inquiry into a jury verdict thirteen years after it was returned.

■ In *Daniels v. United States, supra,* this court upheld the denial of a new trial motion without a hearing where, although an accurate response to a question on *voir dire* might have prompted a defense challenge, the likelihood of prejudice was minimal. Generally speaking, the mere allegation of a "possibility" of some undefined prejudice—which is all the petition and the psychologist's affidavit here can amount to—is completely speculative and not suffi-

---

3. Brooks appears to have changed the emphasis of his petition somewhat on appeal. The petition asserted as the ground for relief that the nondisclosure of McRoy's sightings in the cleaning shop deprived Brooks of a right *to exercise a peremptory challenge.* On appeal, however, counsel limited his contention to arguing that the court below should have afforded Brooks an evidentiary hearing on the question of whether McRoy *was in fact prejudiced* by the sightings.

The district court and the parties on appeal have all treated the latter issue as dispositive. Had Brooks' petition been read solely as claiming a right to vacation of sentence based on the denial of an opportunity to peremptorily challenge a juror, the district court would properly have dismissed it without hearing. A section 2255 petition must allege facts that establish either an error "so fundamental" that the mere fact of its occurrence violates the constitutional rights of the defendant, *cf. United States v. Decoster,* 624 F.2d 196, 201 (D.C.Cir.1979) (en banc) (direct appeal from conviction), or an error which *actually prejudiced* the defendant's case. Absent some fault or deception, the mere failure to exercise a peremptory challenge because a fact was not discovered on *voir dire,* without more, fails to meet either standard. Therefore, the allegation that nondisclosure resulted in a failure to exercise a peremptory challenge adds nothing to a section 2255 petition beyond the other facts alleged in order to show prejudice.

cient to trigger the right to an evidentiary hearing under section 2255. *See, e.g., Eskridge v. United States,* 443 F.2d 440, 443 (10th Cir. 1971) (allegation that defense counsel "acted with bias toward" defendant did not require hearing). Allegations of prejudice must be detailed and specific; even then they may be insufficient as a matter of law to require a hearing. *Machiproda v. United States,* 368 U.S. 487, 495–96, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962). *See, e.g., Smith v. United States,* 431 F.2d 565 (5th Cir. 1970) (per curiam) (motion based on challenge to jury selection system denied without hearing). This is such a case.

IV.

■■■ With respect to the fact that McRoy did not recall his sighting of Brooks until sometime after the trial concluded, and then only at the suggestion of a third party, generally the failure of a juror to disclose facts that might lead to his being challenged will be the basis for the grant of a new trial only if the nondisclosure is deliberate. *Ryan v. United States,* 191 F.2d 779 (D.C.Cir.1951). *See Irving v. Bullock,* 549 P.2d 1184, 1188 (Alaska 1976) (juror affidavits excluded "except in cases of fraud, bribery, or other obstruction of justice"). Brooks has not alleged that McRoy deliberately concealed any material fact on *voir dire*; indeed, the affidavit relied upon states that McRoy answered all questions "honestly." *See* n.1 *supra. See also Van Zee v. Bayview Hardware Store,* 268 Cal. App.2d 351, 74 Cal.Rptr. 21 (1968). Consequently, Brooks does not make a *prima facie* showing of prejudice and therefore no hearing was required.

*Carpenter v. United States,* 100 F.2d 716 (D.C.Cir.1938), relied upon by appellant, is not to the contrary. In that case, on facts closely similar to those involved in the present case, but involving an attack on

*conscious* memory rather than *sub-conscious* memory, the trial court conducted a hearing in which the juror was examined regarding his failure to answer a question on *voir dire.* This court's opinion affirming the denial of the motion for a new trial rested on the ground that the inquiry had produced "no evidence to show that the juror purposely failed to answer the questions of counsel or that he deliberately concealed his acquaintance with them." *Id.* at 717. In the present case, appellant's submission of the McRoy affidavit, which states that the juror answered all questions on *voir dire* honestly, obviates the need for any evidentiary hearing, for it constitutes an *admission* by appellant that McRoy did not "purposely" fail to answer or "deliberately" conceal any material fact. Given this state of appellant's proffered proofs, *Carpenter* is not merely consistent with the district court's judgment but indeed compels it.

■■■ The hearing that Brooks sought on McRoy's affidavit to probe whether he *in fact possessed* a subconscious memory that *influenced his deliberations* in the jury room was also unavailable as a matter of law. First, it is the established rule that a juror's testimony or affidavit "concerning his mental processes in connection ... with [a verdict]" is inadmissible and *may not be used* to support a collateral attack upon such verdict. Fed.R.Evid. 606(b) (emphasis added).[4] Federal Rule of Evidence 606 provides:

> (b) Inquiry into validity of verdict.— Upon an inquiry into the validity of a verdict ... a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or *to the effect of anything upon his ... mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith,* except that a juror may testify on the question whether

---

4. The rule was first announced by Lord Mansfield in *Vaise v. Delaval,* 1 T.R. 11, 99 Eng.Rep. 944 (K.B.1758).

extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. *Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.*

Fed.R.Ev. 606(b) (emphasis added). This rule, subject to its specified exceptions of improper influences, renders McRoy incompetent to testify as to his mental processes or the effect of *"anything"* upon his mind or emotions that might have influenced him on the verdict. Brooks' petition thus impermissibly seeks to explore such matters, and McRoy's affidavit is inadmissible as would be his testimony.

While the courts have accepted the testimony of jurors to the effect that improper outside influences were brought to bear on the jury, *e.g., Mattox v. United States*, 146 U.S. 140, 148–49, 13 S.Ct. 50, 52–53, 36 L.Ed. 917 (1892), "they have consistently refused to consider statements by jurors relating either to the subjective effect such influences might have had on them or to the mental processes through which they arrived at their verdict." *United States v. Green*, 523 F.2d 229 (2d Cir. 1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976). *See, e.g., Putenson v. Clay Adams, Inc.*, 12 Cal.App.3d 1062, 1081, 91 Cal.Rptr. 319, 332 (1970). That has been the rule in the Supreme Court since *Hyde v. United States*, 225 U.S. 347, 382–84, 32 S.Ct. 793, 807–808, 56 L.Ed. 1114 (1912). *See generally McDonald v. Pless*, 238 U.S. 264, 268–69, 35 S.Ct. 783, 784–785, 59 L.Ed. 1300 (1915). Consequently, where "[t]he only questions that the trial judge might have asked at a [Section 2255] hearing would

have concerned the jurors' prejudices and, therefore, would have been impermissible," the trial court was under no obligation to conduct an evidentiary hearing. *United States v. Duzac*, 622 F.2d 911, 914 (5th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980); *accord, United States v. Duncan*, 598 F.2d 839, 866 (4th Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979).

Second, even supposing that McRoy were competent to testify in accordance with his affidavit, here there was simply no showing that any element in the subconscious memory of McRoy could operate to influence a decision against Brooks. There is thus an absence of any claim that petitioner *suffered prejudice* as a result of the facts recited therein. McRoy's sighting of Brooks [5] that was not recalled until some unspecified time after the trial, and was not presented to the court until years later, was not "pertinent to the disposition of an ultimate issue in the controversy, that is, to the jury's consideration of the guilt or innocence of the defendant." *Government of the Virgin Islands v. Gereau*, 523 F.2d 140 (3d Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976), *quoting United States v. Burke*, 496 F.2d 373, 377 (5th Cir. 1974). *Compare United States v. Blair*, 444 F.Supp. 1273 (D.D.C.1978) (hearing held and new trial granted where juror notified court that other juror stated, in course of deliberations on narcotics charges, that she knew defendant and knew that he used drugs).

The purpose of the provisions in Rule 606(b) governing inquiry into jury deliberations, like that of the deliberate-concealment rule governing inquiry into jurors' responses on *voir dire*, is to preserve

---

**5.** The fact that Brooks' petition contains a specific allegation that the jury foreman had seen the defendant, rather than a more general allegation that a juror was prejudiced against people with certain of the defendants' qualities, does not serve to distinguish this case. Brooks' petition suggests no facts that support even a plausible inference that McRoy's unrecalled

sightings of Brooks set McRoy against him. If anything, it suggests the opposite inference: McRoy's affidavit stated that he "paid particular attention to [Brooks'] neat, immaculate and fashionable attire." Most defense counsel would be gratified to have had their client create such an impression.

the integrity of jury deliberations by confining claims of error to events or conditions that are "*improperly* brought to the jury's attention" and involve a calculated, intentional attempt to affect their outcome. *See generally* 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 606[03] (1981). As the present case well illustrates, the rule which generally prevents jurors from impeaching their verdicts is necessary in order to prevent "tampering with individual jurors subsequent to the verdict," *Mattox v. United States*, 146 U.S. at 148, 13 S.Ct. at 52, and to sustain that "[p]ublic policy [which] forbids that a matter resting in the personal consciousness [much less subconsciousness] of one juror should be received to overthrow the verdict." *Id.* "[A] change in the rule 'would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe.' *Cluggage v. Swan*, 4 Binn. 155; *Straker v. Graham*, 4 M. & W. 721." *McDonald v. Pless*, 238 U.S. at 268, 35 S.Ct. at 784. These policies clearly remain compelling notwithstanding Brooks' assertion of the claim that the "expanding frontiers" of psychology have revealed new potential for proving the occurrence of prejudice, for the law precludes even the introduction of a juror's testimony or affidavit admitting to *consciously* prejudiced internal thought processes. *See, e.g., United States v. Eagle*, 539 F.2d 1166 (8th Cir. 1976), *cert.*

*denied*, 429 U.S. 110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977).[6]

## V.

In our decision 11 years ago in *United States v. Brooks, supra*, 449 F.2d at 1084, we noted that the evidence against Brooks was "overwhelming." There is no basis whatsoever for now requiring the district court to conduct a hearing to explore the possibility that *subconscious* memories may have influenced the deliberations of one of the jurors.

McRoy's "*honest*" failure on *voir dire* to remember having observed Brooks was not the sort of "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974). The decision of the district court is therefore affirmed.

*Judgment accordingly.*

---

**6.** Even supposing the Rule 606(b) bar were absent, evidentiary problems remain. The admissibility of the proffered speculative testimony of McRoy under or as refreshed by hypnosis would be highly questionable. As the Supreme Court of New Jersey recently stated:

> Several features of the hypnotic experience explain why hypnosis, unless carefully controlled, is not generally accepted as a reliable means of obtaining accurate recall. First, a person undergoing hypnosis is extremely vulnerable to suggestions. A second aspect of hypnosis that contributes to its unreliability is the loss of critical judgment. A person under hypnosis is more willing to speculate and will respond to questions with the confidence he would not have as a waking person. The third and perhaps most troubling phe-

nomenon is the tendency to confound memories evoked under hypnosis with prior recall. *State v. Hurd*, 86 N.J. 525, 432 A.2d 86, 93 (1981). *See also Lemieux v. Superior Court*, 132 Ariz. 214, 644 P.2d 1300 (Ariz.1982) (hypnotically refreshed testimony inherently unreliable). *See generally* Note, *The Admissibility of Testimony Influenced by Hypnosis*, 67 Va.L. Rev. 1203 (1981). Thus, the use of hypnotically enhanced testimony to explore the internal thought processes of a juror is *particularly* difficult to square with the general fact that "inquiry into the thought processes of any individual is at best speculative and the cases suggest that it is relatively easy to convince a juror that he acted mistakenly ..." 3 Weinstein's Evidence, *supra*, ¶ 606[03] at 606–24.