# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 18, 2025      Decided November 4, 2025

No. 24-3003

UNITED STATES OF AMERICA,
APPELLEE

v.

JONATHAN JOHNSON, ALSO KNOWN AS JOHNATHAN JOHNSON,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00008-1)

———

*Howard B. Katzoff*, appointed by the court, argued the cause and filed the briefs for appellant.

*Mark Hobel*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Edward R. Martin, Jr.*, U.S. Attorney, and *Chrisellen R. Kolb*, *Nicholas P. Coleman*, and *Joshua Gold*, Assistant U.S. Attorneys.

Before: HENDERSON and KATSAS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Appellant Jonathan Johnson was convicted in 2023 for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At the time of his arrest, Appellant was already serving a term of supervised release following convictions for armed robbery and possession of a firearm during a crime of violence. Appellant was indicted in this case because, when he was arrested, he possessed a loaded semiautomatic gun, illegally modified to enable automatic firing.

On July 26, 2023, the jury returned a verdict against Appellant. The day after the verdict was issued, Juror 8 emailed the District Court to say that she had been diagnosed with chronic anxiety and depression. She claimed that she was shunned and disparaged by other jurors and that her "mind was not in the right place" during jury deliberations. Juror 8's email also expressed a concern that, because of her alleged mental infirmities, she did not believe that Appellant had received "fair justice" from the jury. Joint Appendix ("J.A.") 90. Appellant requested that the District Court hold an evidentiary hearing to assess Juror 8's statements regarding her self-asserted mental health conditions.

The District Court denied Appellant's request for an evidentiary hearing. The trial judge concluded that, under Federal Rule of Evidence 606(b), the court was forbidden from relying on evidence regarding jury deliberations that was offered to challenge a verdict. The District Court additionally pointed out that nothing occurred during *voir dire*, jury selection, Appellant's trial, jury deliberations, or polling to suggest that Juror 8's mental competence was at issue. The trial judge thus ruled that there were no viable grounds for conducting an evidentiary hearing.

On appeal, Appellant challenges the District Court's application of Rule 606(b). He argues that Juror 8's asserted chronic anxiety and depression diagnoses undermined his due process right to be tried by mentally competent jurors and thus required further inquiry. He also contends that the portion of Juror 8's email that references her mental health conditions does not disclose anything about jury deliberations and thus does not fall within the compass of Rule 606(b). We disagree.

We hold that the District Court did not err in declining to hold an evidentiary hearing because Rule 606(b) expressly bars evidence of the sort offered in Juror 8's email. The email references Juror 8's interactions with other jurors during jury deliberations, and it questions the propriety of the verdict. The email also addresses a "juror's mental processes concerning the verdict." Fed. R. Evid. 606(b)(1). In these circumstances, we can find no fault with the District Court's judgment.

Appellant also contests the facial validity of § 922(g)(1) and its application to him. He argues that the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), requires us to reject our precedents upholding § 922(g)(1). Appellant argues that, "because the government is unable to meet its burden to demonstrate that the prohibition as a class of all persons with felony convictions from possessing a firearm is consistent with this country's historical tradition of firearm regulation, the statute must be struck down as unconstitutional on its face." Appellant's Br. 10. In addition, Appellant argues that his "possession of a firearm is entitled to the protection of the Second Amendment because his prior convictions do not establish that he is currently a danger to others and his instant offense did not involve violence with a firearm." *Id.* Appellant thus contends that the statute is unconstitutional as applied to him. We reject

4

Appellant's facial and as-applied challenges to § 922(g)(1).

We first note that Appellant's challenges were not timely raised with the District Court. Under Federal Rule of Criminal Procedure 12(b)(3), Appellant was required to assert his challenges to § 922(g)(1) in a pretrial motion, but he failed to do so. And he has provided no "good cause" justification for this failure. *See* Fed. R. Crim. P. 12(c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, . . . a court may consider the defense, objection, or request if the party shows good cause."). The plain error standard also provides an avenue for the appeal of unpreserved claims, *see* Fed. R. Crim. P. 52(b), but it places a heavy burden on the appealing party to demonstrate not only that an error is "obvious" and "affects" his or her "substantial rights," but also that it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (cleaned up). It is unnecessary for us to decide whether an untimely Rule 12(b)(3) motion is subject to review for plain error without a showing of a good cause. Assuming plain error review is available without showing good cause, Appellant has not shown any error that affected his "substantial rights." *United States v. Campos*, 137 F.4th 840, 847 (D.C. Cir. 2025) (citation omitted).

In *Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019), we upheld the facial validity of § 922(g)(1). We do not find it "obvious" that *Bruen* disturbed *Medina*. So on plain error review, we reject Johnson's facial challenge, and we also apply *Medina*'s guidance for as-applied challenges, which requires Appellant to show that his predicate felonies were minor or regulatory. "To the extent that it may be possible for a felon to show that his crime was so minor or regulatory that he did not forfeit his right to bear arms by committing it, [Appellant] has

not done so." *Medina*, 913 F.3d at 160. The violent nature of Appellant's previous convictions makes this impossible.

## I. BACKGROUND

### A. *Appellant's Arrest and Trial*

The facts in this case are taken from the trial record. *See United States v. Baxter*, 761 F.3d 17, 20 (D.C. Cir. 2014). They are not in dispute.

In 2008, Appellant was convicted of armed robbery and possession of a firearm during a crime of violence. During the armed robbery, he physically restrained the victim while his co-conspirator shot the victim in the chest twice. Appellant then took the victim's wallet and fled, leaving the wounded victim in an elevator.

Appellant was arrested again in 2020, while on supervised release for his 2008 convictions. Police officers saw Appellant standing next to a parked car. When Appellant noticed the officers, he turned to face his car and then appeared to crouch down and drop a gun on the floor. Officers recovered a Glock 23 .40 caliber semiautomatic handgun near Appellant. The gun was loaded, had a 22-round magazine attached, and was modified to include an unlawful "giggle switch." The "giggle switch" allows a user to fire automatically with one pull of the trigger.

A grand jury indicted Appellant on one count of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The statute states:

**(g)** It shall be unlawful for any person—

> **(1)** who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>
> . . .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

During jury selection, the District Court read prospective jurors a list of 22 questions and instructed them to note whether they had "yes" answers to any question. Prospective Juror 138 did not have a "yes" answer for either Question 20 ("Are you presently . . . experiencing any medical condition or other physical, mental, or emotional condition that might in any way affect your ability to give your full attention to this case?") or Question 22 ("Is there any other reason that . . . might make it difficult for you to sit fairly, impartially, and attentively as a juror?"). She affirmed that she could be a fair juror and was seated in the jury as Juror 8.

The jury began deliberating after three days of trial. Mid-deliberation, it notified the District Court that "[d]iscussion [was] at an impasse." The District Court instructed the jury to continue deliberating and "keep an open mind." After further deliberations, the jury returned a guilty verdict.

### B. *Post-Trial Proceedings Before the District Court*

The day after the verdict had been entered, Juror 8 sent an email to the District Court. Her email said:

I have been diagnosed [with] chronic anxiety and depression. I feel like the decision I made was made under serious pressure by the court and my fellow jurors which triggered a spin off panic attacks, manic episodes and depression during this time. I made my decision the first day and we were told to go back. At that point I should have dismissed myself as the panic attacks worsened. When I came in the next day I was shunned by my fellow jurors which caused a severe series of more panic attacks. I even broke down in tears in the jury room as people glared at me with evil st[ares]. At the end speaking with the lawyers the panic increased as my comments were dismissed. I quickly exited as chest tightened, hands became sweaty and my head started spinning. My mind was not in the right place. For that reason, I believe this was not . . . fair justice for the defendant. No one should pay for someone else's mental illness. And no one should be pressured into making a decision in this state.

J.A. 90.

After reviewing Juror 8's email, Appellant requested that the District Court hold an evidentiary hearing to further probe Juror 8's mental health. Appellant indicated that he sought to obtain evidence to support a motion for a new trial in which he would argue that Juror 8 was not competent to serve as a juror and had lied during *voir dire*. The District Court denied this request in a written order. It explained that Federal Rule of Evidence 606(b) largely prohibited the submission of such post-trial testimony or other evidence about jury deliberations that was offered to undercut the jury's verdict.

Rule 606(b) reads as follows:

**(b) During an Inquiry into the Validity of a Verdict or Indictment.**

> **(1) Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
>
> **(2) Exceptions.** A juror may testify about whether:
>
> **(A)** extraneous prejudicial information was improperly brought to the jury's attention;
>
> **(B)** an outside influence was improperly brought to bear on any juror; or
>
> **(C)** a mistake was made in entering the verdict on the verdict form.

Fed. R. Evid. 606(b).

The District Court could find no evidence that Juror 8 was mentally incompetent to serve on the jury. The trial judge surveyed Juror 8's participation in *voir dire*, jury selection, the

trial, and the jury poll. The judge also relied on her observations of Juror 8's demeanor throughout the proceedings. Nothing gave the District Court reason to question Juror 8's mental capacity.

The District Court entered a judgment of conviction and sentenced Appellant to 57 months in prison, to be followed by three years of supervised release. Appellant now appeals the District Court's ruling denying his request for an evidentiary hearing. Appellant also challenges the application of 18 U.S.C. § 922(g)(1), raising claims that were never timely brought before the District Court.

## II. ANALYSIS

### A. *Standard of Review*

We review the District Court's decision denying Appellant's request for an evidentiary hearing for an abuse of discretion. *See United States v. Boney*, 977 F.2d 624, 634-35 (D.C. Cir. 1992). The District Court's underlying factual determinations are subject to clear error review. *United States v. Bryant*, 111 F.4th 105, 108 (D.C. Cir. 2024).

Appellant concedes that he failed to raise his constitutional challenges with the District Court. Both parties agree that these arguments are thus untimely. We have not yet decided whether an untimely Rule 12(b)(3) motion is subject to review for plain error without a showing of a good cause. *See United States v. Burroughs*, 810 F.3d 833, 836 (D.C. Cir. 2016). However, we need not decide this question because, as noted in the introduction to this opinion, Appellant has not shown any error that affected his substantial rights in this case. *See Campos*, 137 F.4th at 847.

**B. *The Evidentiary Hearing***

Appellant's appeal of the District Court's ruling denying his request for an evidentiary hearing faces two insurmountable hurdles. First, Federal Rule of Evidence 606(b) generally bars evidence of jury deliberations, with only narrow exceptions that are not relevant in this case. Second, "we have . . . left trial courts especially broad discretion to determine what manner of hearing, if any, is warranted about intra-jury misconduct." *United States v. Williams-Davis*, 90 F.3d 490, 505 (D.C. Cir. 1996) (internal quotation marks and citation omitted).

### 1. Rule 606(b) Excludes Juror 8's Email

Rule 606(b) was adopted in 1975 to "promote[] full and vigorous discussion [among jurors]" and "give[] stability and finality to verdicts." *Peña-Rodriguez v. Colorado*, 580 U.S. 206, 217-18 (2017). It prohibits "the use of *any* evidence of juror deliberations, subject only to the express exceptions for extraneous information and outside influences." *Warger v. Shauers*, 574 U.S. 40, 48 (2014).

The Supreme Court has applied Rule 606(b) strictly to ensure that jury deliberations stay in their "black box." It has insisted on so protecting the jury process even when presented with serious allegations of juror misconduct or dishonesty. For example, in *Tanner v. United States*, 483 U.S. 107 (1987), a juror reported that he and other jurors consumed multiple drinks and took drugs (including marijuana and cocaine) during the trial. *Id.* at 115-16. He also said that a juror sold marijuana to another juror and jurors were falling asleep. *Id.* at 116. The defendants argued that the District Court erred in failing to hold an evidentiary hearing regarding this

misconduct. *Id.* The Court disagreed. It concluded that, "[h]owever severe their effect and improper their use, drugs or alcohol voluntarily ingested by a juror seems no more an 'outside influence' than a virus, poorly prepared food, or a lack of sleep." *Id.* at 122. As an issue internal to the jury, the Court found that the evidence of alcohol and drug consumption proffered in *Tanner* was properly excluded under Rule 606(b). *Id.* at 121. In so ruling, the Court noted that "[t]here is little doubt that postverdict investigation would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior." *Id.* at 120. But the Court explained that leaving those verdicts intact is an acceptable cost of shielding the jury system from undue post-verdict interference and scrutiny. *See id.* at 120-21.

In *Warger*, the Court reiterated the points made in *Tanner*. *Warger* was a negligence case about a car accident that led to the amputation of the plaintiff's left leg. 574 U.S. at 42. After a verdict in favor of the defendant, a juror informed plaintiff's counsel that the jury foreperson revealed during deliberations that her daughter had been at fault in a car accident that killed a man. *Id.* at 43. "[I]f her daughter had been sued," the foreperson reportedly said, "it would have ruined her life." *Id.* (citation omitted). The Court ruled that the District Court did not err in refusing to consider the foreperson's statements pursuant to Rule 606(b). *Id.* at 44, 51. The foreperson's personal experience was a matter "internal" to the jury and thus excluded by Rule 606(b). *Id.* at 51. As in *Tanner*, the Court appeared to understand that its strict adherence to Rule 606(b) imposes costs on individual proceedings but again concluded that these costs are outweighed by the systemic benefits of jury finality and confidentiality. *Id.* at 50. Each defendant's rights are "sufficiently protected by *voir dire*, the observations of court and counsel during trial, and the potential use of

'nonjuror evidence' of misconduct." *Id.* at 51 (citation omitted). So even if a juror should have been struck during *voir dire* but was not, that "mere fact . . . does not make admissible evidence regarding that juror's conduct and statements during deliberations." *Id.* at 53.

We have followed the Supreme Court's directions regarding the application of Rule 606(b). In *United States v. Stover*, 329 F.3d 859 (D.C. Cir. 2003), for example, the District Court rejected further inquiry after receiving a post-verdict note from the jury indicating that some jurors wanted to revisit an issue. *Id.* at 864. We affirmed, writing that Rule 606(b) "precludes taking testimony from . . . jurors . . . regarding their belated misgivings" about their unanimous verdict. *Id.* at 865; *see also United States v. Dakins*, 872 F.2d 1061, 1064-65 (D.C. Cir. 1989) (applying Rule 606(b) to affirm the District Court's decision not to accept evidence of a juror's attempted repudiation of her vote hours after the jury was polled). And in *United States v. Brooks*, 677 F.2d 907 (D.C. Cir. 1982), we affirmed the District Court's denial of an evidentiary hearing on a juror's post-verdict revelation that he had seen the defendant in public before the trial. *Id.* at 910-11. The defendant argued that this may have prejudiced the juror against him. *Id.* at 909-11. But Rule 606(b), we said, made the juror "incompetent to testify as to his mental processes or the effect of 'anything' upon his mind or emotions that might have influenced him on the verdict." *Id.* at 913.

Just as in these cases, a straightforward application of Rule 606(b) here requires the exclusion of Juror 8's email. Appellant sought to use the email to "inquir[e] into the validity of [the] verdict" against him, so Rule 606(b) applies. Fed. R. Evid. 606(b)(1). The email reports on the jury's deliberations ("I made my decision the first day and we were told to go back,"

"I was shunned by my fellow jurors," "people glared at me"), which is clearly prohibited testimony about "any statement made or incident that occurred during the jury's deliberations." *Id.* The email also says that Juror 8 felt her chronic anxiety and depression influenced her participation in deliberations, including by "trigger[ing] . . . panic attacks, manic episodes[,] and depression" that led her to feel that her "mind was not in the right place" during deliberations. Rule 606(b) excludes this information as testimony about "the effect of *anything* on that juror's or another juror's vote" and about "any juror's mental processes concerning the verdict." *Id.* (emphasis added). Nor does Appellant contend that any of Rule 606(b)(2)'s exceptions for extraneous information, outside influence, or a clerical mistake apply. As in *Stover* and *Dakins*, this appears to be a case of buyer's remorse. Rule 606(b) does not allow consideration of such "belated misgivings" about the verdict. *Stover*, 329 F.3d at 865.

We do not find any of Appellant's contrary arguments to be persuasive. First, Appellant argues that Rule 606(b) does not apply to the portion of Juror 8's email that states her two diagnoses because her disclosure of these diagnoses was not offered to explain her participation in deliberations. However, reading Juror 8's email in its entirety shows that Appellant is mistaken. Juror 8 states that she has chronic anxiety and depression and, as a result of how those conditions manifested during deliberations, felt that "the decision [she] made was made under serious pressure." Juror 8 discloses her conditions precisely to explain why she felt that the jury deliberations went wrong. As we have already explained, Juror 8's statements about her diagnoses are therefore exactly the kind of information Rule 606(b) was designed to exclude: "the effect of anything on [Juror 8's] . . . vote," and "[Juror 8's] mental processes concerning the verdict."

Second, Appellant contends in his reply brief that Juror 8's email is subject to a common-law exception for post-verdict investigation into a juror's competence. First, we note that "[a]rguments raised for the first time in a reply brief are forfeited." *Fore River Residents Against the Compressor Station v. FERC*, 77 F.4th 882, 889 (D.C. Cir. 2023). However, even if we consider the argument, it is meritless. Appellant grounds the common-law exception in *Tanner*, but *Tanner* did not hold that such an exception exists. It merely commented that Rule 606(b) could be "interpreted to retain" the exception, *Tanner*, 483 U.S. at 125, when there is "substantial if not wholly conclusive evidence of incompetency." *Id.* (quoting *United States v. Dioguardi*, 492 F.2d 70, 80 (2d Cir. 1974)). *Dioguardi* required "proof of an adjudication of insanity or mental incompetence" to make that showing. 492 F.2d at 80. There is no conclusive evidence of incompetency in this case. Indeed, as noted above, the District Court found that nothing occurred during *voir dire*, jury selection, Appellant's trial, or jury deliberations to suggest that Juror 8's mental competence was at issue. In sum, we hold that the District Court's application of Rule 606(b) did not infringe Appellant's due process rights.

Finally, also for the first time in his reply brief, Appellant suggests that the District Court erred in applying Rule 606(b) to his motion for an evidentiary hearing because he had not yet challenged the verdict. Setting aside that Appellant also forfeited this argument, *see Fore River Residents*, 77 F.4th at 889, the claim cannot be squared with the record. Appellant's stated reason for requesting an evidentiary hearing was to obtain information for his upcoming motion for a new trial based on Juror 8's lack of competency. Rule 606(b) applies to any "inquiry into the validity of a verdict," and the only point

of the evidentiary hearing on Juror 8 was to challenge the verdict she voted for. Appellant's purpose – to unsettle the verdict – is exactly what Rule 606(b) contemplates and seeks to avoid.

### 2. The District Court Did Not Abuse Its Discretion in Denying Appellant's Request for an Evidentiary Hearing

Appellant concedes that there is no evidence, other than Juror 8's email, that Juror 8 struggled with her mental health. Juror 8 participated in *voir dire*, sat through Appellant's trial, and deliberated without any apparent difficulty, and the District Court judge's personal observations of Juror 8's demeanor throughout the proceedings confirmed that there was no issue. The District Court was thus well within its "especially broad discretion" to deny Appellant's request for a hearing on Juror 8's mental health. *Williams-Davis*, 90 F.3d at 505; *see also Tanner*, 483 U.S. at 127 ("[T]he District Court did not err in deciding, based on the inadmissibility of juror testimony and the clear insufficiency of the nonjuror evidence offered by petitioners, that an additional postverdict evidentiary hearing was unnecessary."). We will not second guess this determination, which was based in large part on the District Court judge's firsthand impressions of Juror 8.

Appellant suggests that the District Court ignored Juror 8's disclosure that she was diagnosed with chronic anxiety and depression and experienced panic attacks and manic episodes during deliberations. But the District Court did not ignore this information. It considered Juror 8's statements carefully and decided – correctly, as we explained – that Rule 606(b) did not permit reliance on the statements to challenge the verdict. So the District Court did not abuse its discretion in denying

Appellant's request for an evidentiary hearing.

## C. *The Felon-in-Possession Statute*

### 1. Appellant's Facial Constitutional Challenge Fails

We find no merit in Appellant's facial challenge to § 922(g)(1). As noted above, Appellant offers no "good cause" for his failure to adhere to the filing requirements under Federal Rule of Criminal Procedure 12(c)(3). However, even if we apply the standard in Federal Rule of Criminal Procedure 52(b), we reject Appellant's claim that § 922(g)(1) is facially unconstitutional and that his prosecution under the statute was plain error.

Following the issuance of *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), federal circuit courts "coalesced around a 'two-step' framework for analyzing Second Amendment challenges." *Bruen*, 597 U.S. at 17. At the first step, the court asked whether the "activity or offender subject to the challenged regulation falls outside the Second Amendment's protections." *Schrader v. Holder*, 704 F.3d 980, 988-89 (D.C. Cir. 2013). If so, the analysis ended. If not, then the court "determine[d] whether the provision passe[d] muster under the appropriate level of constitutional scrutiny." *Id.* at 989 (citation omitted).

As noted above, this court rejected a challenge to the facial constitutionality of 18 U.S.C. § 922(g)(1) in *Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019). *Medina* examined the "public understanding of the [Second Amendment] right [in 1791, when the Second Amendment was ratified] to determine

if a convicted felon would fall outside the scope of its protection." 913 F.3d at 158. Around that time, we observed that felonies – both violent crimes like murder and rape and nonviolent crimes like forgery and embezzlement – were capital crimes. *Id.* This made it "difficult [for us] to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Id.* We thus held that "a felony conviction removes one from the scope of the Second Amendment" and rejected the challenge to § 922(g)(1) at the first step of the *Schrader* test. *Id.* at 160. We did not proceed to the second step. *Id.* at 161.

No intervening Supreme Court decision establishes that it was plain error to apply *Medina* in this case. In *Bruen*, the Court rejected the second step's means-end balancing as inconsistent with *Heller*'s text-and-history approach. *See* 597 U.S. at 22-24. Thus, the Court said that federal circuit courts had erred in interpreting *Heller* to authorize means-end balancing. *Id.* at 24. Instead, if "the Second Amendment's plain text covers an individual's conduct," the government can only justify the regulation "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*.

*Medina* held, based on a historical analysis of the meaning of the Second Amendment at the time of its ratification, that felons are not protected by the Second Amendment. *Bruen* endorsed that first-step analysis. *See id.* at 19 (observing that "[s]tep one of the predominant framework is broadly consistent with *Heller*"). *Medina* is consistent with the Justices' repeated reassurances, since *Heller*, that their emphasis on text and history in Second Amendment cases does not necessarily put § 922(g)(1) on questionable grounds. In *Heller*, Justice Scalia wrote for the majority that "nothing in [the] opinion should be

taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 555 U.S. at 626. Justice Alito "repeat[ed] th[at] assurance[]" in *McDonald*. 561 U.S. at 786 (plurality opinion). Justice Kavanaugh, in his *Bruen* concurrence, 597 U.S. at 81, and Chief Justice Roberts, in his opinion for the Court in *United States v. Rahimi*, 602 U.S. 680 (2024), did as well. *Id.* at 699. Our approach is also consistent with how some other circuits have decided post-*Bruen* challenges to § 922(g)(1). *See United States v. Canada*, 123 F.4th 159, 161 (4th Cir. 2024) ("No federal appellate court has held [since *Bruen*] that Section 922(g)(1) is facially unconstitutional."); *see also United States v. Forbis*, 2025 WL 2778834, at *3 (10th Cir. Sep. 30, 2025) (observing that multiple circuits, including the Fourth, Ninth, Tenth, and Eleventh, have concluded they remain "bound by their pre-*Bruen* decisions upholding § 922(g)(1)'s constitutionality").

In sum, Appellant's prosecution under § 922(g)(1) was not plain error. As mentioned above, we do not find it "obvious" that *Bruen* disturbed *Medina*. So, in undertaking plain error review, we reject Appellant's facial challenge.

### 2. Appellant's As-Applied Constitutional Challenge Fails

We also reject Appellant's as-applied challenge to § 922(g)(1). Appellant offers no "good cause" for his failure to adhere to the filing requirements under Federal Rule of Criminal Procedure 12(c)(3). However, even if we apply the standard in Federal Rule of Criminal Procedure 52(b), we find no plain error in the application of § 922(g)(1) to Appellant.

In *Medina*, we held open the possibility that a "felon [could] show that his crime was so minor or regulatory that he

did not forfeit his right to bear arms by committing it." 913 F.3d at 160. But we also said that Medina's convictions for felony and misdemeanor fraud indicated a "disregard for the basic laws and norms of our society" that is "precisely what differentiates a criminal from someone who is 'law-abiding.'" *Id.* If nonviolent fraud convictions are not sufficiently "minor or regulatory" to succeed on an as-applied challenge under *Medina*, Appellant's convictions for violent crimes do not come close.

Appellant's predicate felonies are not remotely comparable to those in *Range v. Attorney General of the United States*, 124 F.4th 218 (3d Cir. 2024) (en banc). *Range* is the only post-*Bruen* circuit decision holding § 922(g)(1) unconstitutional as applied to a specific defendant. *See Forbis*, 2025 WL 2778834, at *3. Range pleaded guilty to one count of food stamp fraud after he signed a food stamp application, prepared by his wife, that underreported his income. *Range*, 124 F.4th at 222-23. He was sentenced to three years of probation, but his crime was punishable by up to five years imprisonment under Pennsylvania law. *Id.* at 223. Range was thus subject to § 922(g)(1)'s prohibition on firearm possession by anyone convicted of a "crime punishable by imprisonment for a term exceeding one year." *Id.* (quoting 18 U.S.C. § 922(g)(1)). In holding § 922(g)(1) unconstitutional as applied to Range, the Third Circuit emphasized that there was "no evidence that [Range] poses a physical danger to others or that food-stamp fraud is closely associated with physical danger." *Id.* at 230. It also noted that "Range's crime . . . did not involve a firearm." *Id.* at 231. None of that can be said about Appellant's personal involvement in seriously harming another person using a firearm.

As we have already explained, *Medina* says that

§ 922(g)(1) may only be unconstitutional as applied to defendants with "minor or regulatory" predicate felonies. 913 F.3d at 160. Appellant's crimes surely do not qualify, so it was not plain error to apply § 922(g)(1) to Appellant. We do not address whether there are any preserved as-applied challenges that would succeed.

### III. CONCLUSION

For the reasons stated above, the judgment of the District Court is affirmed.

*So ordered.*